FILED
Dec 16, 2019
01:52 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| Medhat Said, | ) | Docket No. 2018-06-0433 |
| Employee, | ) | |
| v. | ) | |
| Communications Test Design, Inc., | ) | State File No. 60229-2019 |
| Employer, | ) | |
| And | ) | |
| Zurich American Ins. Co., | ) | Judge Kenneth M. Switzer |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER

Medhat Said alleged he suffered a cumulative trauma injury while working for Communications Test Design, Inc. Mr. Said seeks medical benefits, specifically reimbursement for unauthorized care, and past temporary total disability benefits. After an expedited hearing on December 11, 2019, the Court holds that Mr. Said is likely to prevail at a hearing on the merits that he suffered a cumulative trauma injury arising primarily out of employment, but it cannot grant the requested relief at this time.

### History of Claim

Mr. Said felt pain in his left shoulder while working on August 7, 2017. CTDI directed him to Dr. Robert Carver. At the first visit, Mr. Said reported "left anterior shoulder pain [that he] attributed to repetitive scanning of cable boxes daily." Dr. Carver diagnosed a repetitive strain injury to the left shoulder and placed Mr. Said on modified duty. Mr. Said continued to complain of shoulder pain on September 20, but Dr. Carver found the repetitive strain injury to biceps tendon had resolved and returned him to regular duty.

When the pain persisted, CTDI offered a panel, and Mr. Said chose Dr. Malcolm Baxter, an orthopedic specialist. At the first visit on October 6, Dr. Baxter wrote that Mr. Said's pain "started after scanning a lot of boxes" and "sharp pain with repetitive motions involved with his job." Dr. Baxter concluded, "This does appear to be work

1

related more than 50% based on his history."

At the next visit, Dr. Baxter placed restrictions and ordered a shoulder MRI, which revealed "no threshold evidence for rotator cuff or glenoid labral tear." As a result, Dr. Baxter removed the restrictions in December, released Mr. Said from treatment, and assigned a zero-percent impairment rating.

Mr. Said returned in February 2018 stating that his shoulder still hurt. At that time, Dr. Baxter wrote that the work incident "really wasn't an injury, more just using the arm," and he altered his causation opinion by noting, "I don't see any evidence of a work related injury." After receiving the revised causation opinion, CTDI denied further treatment.

Mr. Said then sought treatment on his own from Dr. Jason Jones, another orthopedic surgeon. In March, Dr. Jones surgically debrided the shoulder and afterward diagnosed a left-shoulder subscapularis tear, biceps tendon tear and labral tear. Mr. Said testified that he continued to treat with Dr. Jones afterward and was unable to work, but he introduced no records documenting this restriction.[1] CDTI later terminated Mr. Said.

Dr. Jones's October 9, 2018 notes state that Mr. Said still complained of left-shoulder pain; Dr. Jones characterized it as "of unknown etiology." He placed Mr. Said at maximum medical improvement and restricted him from performing any repetitive motion with the left arm.

The parties introduced letters from their respective experts to support their positions regarding the work-relatedness of the injury. Mr. Said relied on a June 2019 letter to Dr. Jones in which Mr. Said's attorney asked Dr. Jones whether he could state within a reasonable degree of medical certainty that Mr. Said's employment contributed more than fifty percent in causing his injury, considering all causes, and whether repetitive movement is a common cause of tendonitis. Dr. Jones circled "yes" to both questions. He also wrote that the surgery was reasonable and necessary.

For its part, CDTI relied on Dr. Baxter's records, responses to its counsel's letter, and the doctor's undated narrative. In response to the letter, Dr. Baxter wrote, "[Y]es[,] he did sustain an injury to the left shoulder arising primarily [out] of his employment, contributing more than 50%." Dr. Baxter wrote that he did not find a left-shoulder subscapularis tear, biceps tendon tear or labral tear, and that surgery was unnecessary. Further, in the narrative, Dr. Baxter wrote:

---

[1] Mr. Said's counsel provided additional medical records from Dr. Jones and from physical therapy to the mediator, but she did not file them with the Clerk. She attempted to introduce these records at the hearing, but the Court sustained CTDI's objections.

The patient did not relate a specific injury to me during our discussions with one another. He stated that he simply had some soreness in his shoulder from scanning boxes while working[.] . . . In my opinion, Mr. Said did not suffer a discrete injury at work. This is based on the history he gave me of no particular injury and the MRI[,] which did not show any structural deficits or injury to the shoulder.

Mr. Said argued that Dr. Jones and Dr. Baxter (initially) gave the opinion that his injury is work-related. He asked the Court to order payment for his surgery and past temporary total disability benefits. Mr. Said testified he incurred approximately $28,000 in medical bills for Dr. Jones's treatment but did not introduce the bills into evidence. CTDI argued that Dr. Baxter's post-surgery causation opinion is correct and that the surgery, which was not successful in treating Mr. Said's symptoms, did not treat a work-related condition.[2]

## Findings of Fact and Conclusions of Law

Mr. Said must present sufficient evidence that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The threshold issue is whether Mr. Said suffered an injury as defined in the Workers' Compensation Law. Tennessee Code Annotated section 50-6-102(14) provides that an "injury" means an "injury by accident . . . or cumulative trauma conditions . . . or any other repetitive motion conditions, arising primarily out of and in the course and scope of employment, that causes . . . the need for medical treatment[.]" Further, the employment must contribute more than fifty percent in causing the injury, considering all causes, which must be shown to a reasonable degree of medical certainty. *Id.* at 50-6-102(14)(B)-(D). Here, the Court must determine if Mr. Said carried his burden in establishing these elements considering differing opinions. "[W]hen faced with competing expert medical opinions, trial courts are granted broad discretion in choosing which opinion to accept." *Gilbert v. United Parcel Serv., Inc.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 20, at *11-12 (June 7, 2019).

The parties agreed that Mr. Said chose Dr. Baxter from a panel. Therefore, his opinion as the authorized treating physician is presumed correct under Tennessee Code Annotated section 50-6-102(14)(E), but this presumption can be overcome by a preponderance of the evidence.

Here, Dr. Baxter initially noted that Mr. Said reported a repetitive-motion injury

---

[2] Both parties raised additional issues in their briefs, but the Court only addresses those argued at the hearing.

3

related to his work. He later wrote in his narrative, however, that the injury was not work-related because Mr. Said did not report a "specific injury" during their discussions. Rather, he "simply had some soreness in his shoulder from scanning boxes[.]" He further wrote, "In my opinion, Mr. Said did not suffer a discrete injury at work. This is based on the history he gave me of no particular injury and the MRI[,] which did not show any structural deficits or injury to the shoulder." However, in response to a written question from CTDI, he later wrote, "[Y]es[,] he did sustain an injury to the left shoulder arising primarily [out] of his employment, contributing more than 50%."

In contrast, Dr. Jones offered an opinion within a reasonable degree of medical certainty that Mr. Said's employment contributed more than fifty percent in causing the injury, considering all causes. He further stated that repetitive movement is a common cause of tendonitis.

Reviewing the two opinions in context, the Court finds Dr. Baxter initially thought the repetitive injury was work-related, but he later changed his opinion because Mr. Said suffered no "specific injury" or event. This opinion runs counter to the statute's inclusion of "cumulative trauma conditions" or "other repetitive motion conditions" within the definition of compensable injuries. In his post-surgery response to counsel's letter, Dr. Baxter specifically confirmed the injury as work-related. Meanwhile, Dr. Jones stated that repetitive movement is a common cause of bicep tendonitis.

Further, the Court considers the circumstances of the physician's treatment. Dr. Baxter provided conservative treatment over four visits before discharging Mr. Said as a patient. Conversely, though the Court cannot determine the number of office visits, Dr. Jones had greater contact with Mr. Said because he performed surgery, directly observing and diagnosing the tear. "It seems reasonable that the physicians having greater contact with the [employee] would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Bass v. The Home Depot USA, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *14 (May 27, 2017).

In sum, the Court finds Dr. Jones's opinion straightforward and persuasive, while Dr. Baxter's opinion changed over time, even though his last opinion is unequivocal that the shoulder injury arose out of employment. Thus, the Court holds Mr. Said is likely to prevail at a hearing on the merits that his left-shoulder condition arose primarily out of his employment at CTDI.

In light of this conclusion, the Court turns to the requested relief. First, Mr. Said seeks payment of his past medical bills. CTDI argued that he is unlikely to prevail on this request, citing *Eaves v. Ametek, Inc.,* 2018 TN Wrk. Comp. App. Bd. 53 (Sept. 14, 2018). In *Eaves,* the Appeals Board offered guidance as to the proper means of authenticating bills so they are admissible evidence. The bills must be authenticated and identified as accurate, and supporting documentation must show that they were

4

identified as accurate, and supporting documentation must show that they were reasonable and related to the work accident. *Id.* at *8. Here, Mr. Said met none of these requirements. Therefore, the Court denies his request for payment of medical bills at this time.

Next, Mr. Said requests past temporary disability benefits. To establish his entitlement to these benefits, he must show he (1) became disabled from working due to a compensable injury, (2) a causal connection between the injury and his inability to work, and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Here, the Court previously found he is likely to prevail at the final hearing on the issue of compensability. However, the evidence does not show a causal connection between his inability to work and the injury, or the duration of disability. Therefore, the Court denies Mr. Said's request for temporary total disability benefits at this time.

IT IS, THEREFORE, ORDERED AS FOLLOWS:

1. Mr. Said's request for medical and temporary disability benefits is denied at this time.

2. This case is set for a Scheduling Hearing on **February 10, 2020, at 9:30 a.m. Central Time.** You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Hearing. Failure to call might result in a determination of the issues without your participation.

**ENTERED December 16, 2019.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Affidavit of Medhat Said
2. First Report of Injury
3. Employer's Medical Records
4. Dr. Baxter's memorandum and causation letter response to Employer's counsel
5. Dr. Jones's response to CTDI Human Resources's letter about work restrictions
6. Dr. Jones's response to causation letter from Employee's counsel
7. Employee's Medical Records
8. Employer's Statement of Wage Earnings

9. Employee of the Month certificate
10. Job description
11. Medical Record of Concentra, August 31, 2017 (Identification only)
12. Restrictions, Dr. Jones (Identification only)
13. Termination letter (Identification only)

Technical Record:
1. Petitions for Benefit Determination (March 14 and November 26, 2018)
2. Dispute Certification Notice and Employer's list of issues
3. Request for Expedited Hearing
4. CTDI's Pre-Expedited Hearing Statement of
5. Employer's Motion for Permission to Present Witness Testimony By Telephone or Videoconferencing
6. Order Granting Employer's Motion
7. Employee's Reply to Employer's Pre-Expedited Hearing Statement
8. Plaintiff's Objection to Late Filed Medical Report
9. Post-Expedited Hearing Motion to Enter a Late-Filed Exhibit
10. Order Denying Motion to Enter a Late-Filed Exhibit

## CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent as indicated on December 16, 2019.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Linda Sue Nicklos, Employee's attorney | | | x | lindasuenicklos@gmail.com lawofficelsn@gmail.com |
| Michael Haynie, Employer's Attorney | | | x | mhaynie@manierherod.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

6



### Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):_____** At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*** Attach an additional sheet for each additional Appellee ***

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules
of Board of Workers' Compensation Appeals on this the_____ day of_____, 20___

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries        $ _____ per month    Telephone      $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing        $ _____ per month

Gas              $ _____ per month    Child Care      $ _____ per month

Transportation   $ _____ per month    Child Support   $ _____ per month

Car              $ _____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile            $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House                 $ _____        (FMV) _____

Other                 $ _____        Describe: _____

11. My debts are:

Amount Owed                    To Whom

_____            _____

_____            _____

_____            _____

_____            _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                    RDA 11082